COMMONWEALTH vs. JOHN F. CONNEARNEY.

Norfolk.   February 2, 1971. — April 7, 1971.

Present: TAURO, C.J., SPALDING, CUTTER, SPIEGEL, & BRAUCHER, JJ.

Practice, Criminal, Verdict, Trial of defendants together, Guarding of
    defendant in courtroom, Mistrial, Surprise evidence, Deliberation of
    jury.

At a joint trial against two inmates of a correctional institution for
    murder of another inmate by stabbing, where the evidence, including
    properly limited inculpatory statements of a defendant found guilty
    by the jury, was more substantial and persuasive against him than
    against the other defendant, who was found not guilty, there was
    no merit in the convicted defendant's contention that the verdicts
    were inconsistent. [202–203]
At a joint trial of defendants for murder by stabbing, there was no
    prejudice to the only defendant convicted in that the defendants
    were shackled while the jury were being empanelled. [203–204]
There was no error in a murder case in the denial of a motion for a
    mistrial on the ground that the defendant did not have a chance
    to cross-examine immediately a witness for the Commonwealth who
    had made an introductory "unsolicited statement" and had been
    ordered out of the courtroom, and who was fully examined and
    cross-examined later. [204]
At a joint trial for murder against two defendants, only one of whom
    was convicted, there was no error in the denial of a motion by him
    for a severance nor merit in his contention that the failure to sever
    prejudiced him by reason of evidence implicating the other defend-
    ant. [204, 205]
At a joint trial against two defendants indicted for murder, there was
    no error in permitting a defendant, who had rested immediately after
    the Commonwealth had rested, to absent himself from the court-
    room while the other defendant presented his defence. [205]
Where a defendant convicted of murder had access to the grand jury
    testimony of a witness and to certain statements made by the de-
    fendant, there was no merit in his contention that the witness's
    testimony and such statements came as a surprise and should have
    been excluded. [205]
There were no "special circumstances" in a murder case which made
    inappropriate the giving of the charge approved in Commonwealth v.
    Tuey, 8 Cush. 1, about eleven and one-half hours after the jury
    had retired to deliberate. [205–206]

INDICTMENT found and returned in the Superior Court on October 4, 1968.

The case was tried before *Hale, J.*

*E. Peter Mullane* for the defendant.

*John P. Connor, Jr., & Robert J. Fleming,* Special Assistant Attorneys General, for the Commonwealth.

TAURO, C.J. John F. Connearney, Gerhard N. Letellier and William Hayes were tried as codefendants for the murder of Joseph Dermandy. A verdict of not guilty was directed for Hayes, and Letellier was found not guilty by the jury. Connearney was convicted of murder in the second degree and has appealed under G. L. c. 278, §§ 33A–33G.

The evidence is summarized: On the evening of June 28, 1968, Dermandy was slain in his cell at the Massachusetts Correctional Institution at Norfolk. The cause of death was multiple stab wounds in the back. One Gerald Wallace testified that on the afternoon of June 28, 1968, he and the defendants Connearney and Letellier had some discussion as to who had gone to the administration in connection with the searching of another inmate's room. He quoted Connearney as saying that Dermandy probably was the person involved and that Dermandy called Hayes a locker thief. That evening, at approximately 8:15 P.M., Wallace saw Letellier and Connearney enter, leave, and then return to Dermandy's room. At approximately 8:30 P.M., Connearney, Letellier and Dermandy left the room. About 8:45 P.M., the three codefendants entered Dermandy's room. Letellier came out and asked Wallace for a knife. Wallace replied that Dermandy had two knives in the bathroom. Wallace showed Letellier the location of the knives and Letellier placed one knife behind a radiator and the other in his pocket. Around 9:15 P.M., Wallace went to Dermandy's room where he observed Letellier with a knife in his hand, either putting it into or taking it out of Dermandy, and Connearney lifting Dermandy's body off the floor with a cord around Dermandy's neck. The codefendant Hayes was also in the room. Wallace assisted another inmate in plac-

ing the body on the bed. After Wallace had washed his hands Letellier told Wallace, "Take the knife. Take the knife. I have to wash up." Wallace and O'Brien, another inmate, attempted to dispose of the knife, but Wallace could not remember what happened to it.

Albert P. Guilmette, another inmate, testified that around 9 P.M., he heard a noise and saw a group of men going to Dermandy's room. A short time later Connearney and Wallace came to Guilmette's room and Connearney said, "We have Dermody [*sic*] down there. . . . We are going to have to kill him." Connearney later saw Guilmette and told him that Dermandy was dead and warned him and Joseph Martin, another inmate, about saying anything or else "we will get you and we will get your family." These statements were limited by the trial judge to Connearney. Joseph Martin corroborated Guilmette's testimony as to Connearney's statements. Martin also testified that he saw Connearney, Wallace and O'Brien in Dermandy's room and that Connearney had a knife in his hand.

Letellier rested his case immediately after the Commonwealth rested and was permitted to absent himself from the court room while Connearney presented his defence. Letellier returned to the court room after Connearney rested his case.

The case went to the jury at 10:20 A.M. on July 29, 1969. At 9:55 P.M., the trial judge gave the *Tuey* (*Commonwealth* v. *Tuey*, 8 Cush. 1) charge. At midnight the jury were permitted to retire and resume deliberations the following morning. At 2 P.M., the jury returned a verdict of not guilty for Letellier and guilty for Connearney.

1. Connearney contends that the verdicts of guilty as to him, and not guilty as to Letellier, are inconsistent and in violation of Connearney's constitutional rights. He argues that the inconsistency arises from the fact that the evidence introduced by the Commonwealth was substantially based on the same facts and the same witnesses against each of the defendants. We disagree. The record clearly contradicts his claim. The evidence against him appears to be more substantial and persuasive than the evidence against

Letellier. The witness Albert P. Guilmette testified that Connearney said to him, "We have Dermody [*sic*] down there. . . . We are going to have to kill him." This conversation was limited by the judge to Connearney. Other inculpatory statements before and after the murder were introduced only against Connearney. Thus, Guilmette quoted Connearney as saying, on the night of the homicide, "This ain't the first guy I killed. He's a punk and he deserves to die." Joseph Martin corroborated some of Guilmette's testimony as to inculpatory statements made by Connearney. Martin also testified that he looked into Dermandy's room and saw Wallace, O'Brien and Connearney there. Letellier is not mentioned. According to Martin, and in contrast with Wallace's testimony, Connearney had a knife in his right hand. Martin later saw Letellier merely walking in the hallway. Wallace testified that he saw Connearney holding a cord around Dermandy's neck. Philip Picard, the prison superintendent, testified that during his investigation of the killing, inmates Martin and Guilmette named Connearney, Wallace and O'Brien as the men assaulting Dermandy. It is apparent that the jury carefully weighed the evidence in its application to each defendant. The joinder of Letellier and Connearney in a trial for the murder of Dermandy did not require that both defendants be found guilty or innocent. "In *Commonwealth* v. *Slate*, 11 Gray, 60, 63, it was stated that there can be no question as to the propriety of convicting one and acquitting another of defendants indicted jointly when the charge does not involve from its character, as in the case of a charge of conspiracy or riot, the united act of two or more individuals to constitute an offence in either . . . , and that in all other cases the joinder of two or more persons in an indictment does not require that all should be found guilty or none." *Commonwealth* v. *Carter*, 306 Mass. 141, 143–144.

A careful examination of the record leads us to conclude that there is no merit to Connearney's contention that the jury reached "inconsistent" verdicts because of prejudicial action by the trial judge. (a) Connearney claims prejudice

because he and his codefendants were shackled while the jury were being empanelled. This court has stated that "a judge properly should be reluctant to interfere with reasonable precautions which a sheriff deems necessary to keep secure prisoners for whose custody he is responsible and, if a judge fails to require removal of shackles, his exercise of a sound discretion will be sustained." *Commonwealth* v. *Agiasottelis,* 336 Mass. 12, 16. See *Commonwealth* v. *Dirring,* 354 Mass. 523, 528. (b) Equally without merit is Connearney's claim of prejudice in the denial of his motion for a mistrial after the initial testimony of Paul Day, an inmate at Bridgewater State Hospital.[1] The trial judge properly was concerned about the competency of the witness and merely delayed the witness's testimony.

2. Connearney contends that his right to a fair trial was prejudiced by the trial judge in denying his motion to sever and that failure to sever the cases permitted the jury to hear evidence which would have been inadmissible against Connearney had his case been tried separately. This argument is unpersuasive. It is a well-established rule in this Commonwealth that, in the absence of constitutional requirements, severance rests in the sound discretion of the court. *Commonwealth* v. *Fancy,* 349 Mass. 196, 204, and cases cited. The trial judge must determine "whether the defendants' or the Commonwealth's substantial rights will be prejudiced by consolidation or severance for trial . . . ." *Commonwealth* v. *Iannello,* 344 Mass. 723, 727. Here there appears to have been no prejudice to Connearney. The mere fact that all evidence is not admissible against all defendants does not require severance; and the judge properly instructed the jury as to the applicability of such evidence. *Katz* v. *United States,* 321 F. 2d 7, 8 (1st Cir.), cert. den.

---

[1] After taking the stand, Day said, not in response to a question, "I am going to tell you that I am lying in this case. Two or three of the other inmates are lying also in order to gain parole. That is true." The judge instructed the jury to disregard the "unsolicited statement" and ordered that Day be taken out of the court room. Connearney moved for a mistrial on the ground that he did not get a chance to cross-examine Day. At that point the prosecution had barely begun direct examination. Later in the trial Day was fully examined and cross-examined.

375 U. S. 903. See *Commonwealth* v. *Millen*, 289 Mass. 441, 460, cert. den. sub nom. *Millen* v. *Massachusetts*, 295 U. S. 765. Although Connearney admits that the judge instructed the jury on limiting evidence to certain defendants, he argues that he was, nevertheless, prejudiced by the evidence admitted against the defendant Letellier. It is difficult to see how Connearney was prejudiced by evidence that Letellier asked a witness for a knife, that Letellier was seen stabbing the victim, and that Letellier told the witness Wallace to take the murder weapon while he washed up. *Bruton* v. *United States*, 391 U. S. 123, cited by Connearney, has no application in these circumstances.

There was no error in permitting Letellier to absent himself from the court room after the Commonwealth rested its case against him. The court properly instructed the jury that Letellier had voluntarily chosen not to be present and that no further evidence would be admissible against him.

3. There is no merit to Connearney's claim that the trial judge erred in admitting evidence despite the objection that it came as a surprise. Connearney argues that the evidence was not included in the Commonwealth's answers to the pre-trial motions for a copy of statements and grand jury minutes. This claim by Connearney has reference to testimony by the witness Gerald Wallace. There was no error. The assignment of error itself refers to "grand jury minutes furnished to defendant by order of the Court." A reading of the transcript indicates that the defence had access to Wallace's grand jury testimony, as well as to other statements made by Connearney.

Connearney's claim that he was denied access to witnesses is not substantiated by the record. Moreover, this argument was raised here for the first time on appeal. There was no error. See *Commonwealth* v. *Foley*, 358 Mass. 233, 236.

4. Connearney claims that the trial judge erred in giving the *Tuey* charge (*Commonwealth* v. *Tuey*, 8 Cush. 1). The *Tuey* charge was given approximately eleven and one-half hours after the jury had retired to deliberate. This court

has recently upheld use of the *Tuey* charge stating, "We think that the language of the *Tuey* case has stood the test of time as a reasonable method of inviting a jury's attention, even after the original charge, to considerations which, as reasonable men, they should take into account, without surrendering positions which conscience and careful judgment have led them to adopt." *Commonwealth* v. *Rollins*, 354 Mass. 630, 638. There are no "special circumstances" in the present case which made the use of the *Tuey* charge inappropriate.

A review of the record, exhibits and transcript reveals no grounds for reversing Connearney's conviction.

*Judgment affirmed.*