## JIM DARNEAL v. STATE.

No. A-2560.   Opinion Filed September 11, 1917.

Rehearing Denied August 27, 1918.

(174 Pac. 290.)

1.  **WITNESSES—Competency—Discretion of Trial Court.** The question of the competency of a witness under ten years of age is a matter addressed peculiarly to the discretion of the trial court.

2.  **APPEAL AND ERROR—Discretion of Trial Court—Competency of Witness.** Where the trial court permits such a witness to testify and it appears conclusively from the record on appeal that there has been an abuse of that sound discretion placed in such court by section 5050, Rev. Laws 1910, the appellate court is authorized and will reverse a judgment of conviction upon such ground if it appears that the testimony of such witness was prejudicial to the accused; however, on the other hand, where no abuse of discretion appears, then this court is not authorized to reverse a judgment of conviction solely upon the ground that a witness under ten years of age was permitted to testify for the state.

3.  **TRIAL—Instruction—Credibility of Single Witness.** It is not error to refuse to give an instruction which has a tendency to single out any particular witness by calling to the attention of the jury that such witness has been impeached. The general instruction covering the credibility of all witnesses is a sufficient rule for the guidance of the jury in determining the credibility of any witness.

4.  **RIOT—Disguise—Sufficiency of Evidence.** Evidence examined, and **held** sufficient to sustain a conviction for the crime of riot committed while disguised.

*Appeal from District Court, LeFlore County;*

*W. H. Brown, Judge.*

Jim Darneal was convicted of the crime of riot, and he brings error.   Affirmed.

*Neal & Fleming,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *R. McMillan,* Asst. Atty. Gen., for the State.

MATSON, J. Jim Darneal was convicted in the district court of LeFlore county of the crime of riot, committed by himself and several others, acting together with him disguised, and sentenced to the penitentiary for a term of two years' imprisonment.

According to the witnesses for the state, this plaintiff in error and several others, in the nighttime, took an old man by the name of W. J. Garrison from his tent where he was living with his two daughters, on the banks of a small creek in LeFlore county, making a livelihood by fishing, dragging him a short distance, beating, whipping, and otherwise abusing the old man, also cutting off his hair. The defense was an alibi. All of the parties to the crime lived in that immediate neighborhood, and each presented a different alibi. Jim Darneal asked for a severance, which was granted.

He first contends that the court erred in permitting Rachael Garrison, a girl nine years of age, to testify as a witness against him. The statute of this state governing the competency of witnesses of tender age is as follows (section 5050, Rev. Laws 1910):

"The following persons shall be incompetent to testify. * * * 2. Children under ten years of age, who appear incapable of receiving just impressions of the facts respecting which they are examined, or of relating them truly."

It is apparent from the reading of the above statute that the question of the competency of a witness under ten years of age is a matter addressed peculiarly to the discretion of the trial court. If the trial court permits such a witness to testify, and it appears conclusively from the record on appeal that there has been an abuse of that

sound discretion placed in such court, then this appellate court is authorized to and will reverse a judgment of conviction upon such ground if it appears that the testimony of such witness was prejudicial to the accused; however, on the other hand, where no abuse of discretion appears, then this court is not authorized to reverse a judgment of conviction solely upon this ground. The weight of authority is clearly to the effect above stated. The following cases are in point: *Walker v. State,* 12 Okla. Cr. 179, 153 Pac. 209; *Milligan v. Territory,* 2 Okla. 164, 37 Pac. 1059; *People v. Swist,* 136 Cal. 520, 69 Pac. 223; *People v. Baldwin,* 117 Cal. 244, 49 Pac. 186; *People v. Daily,* 135 Cal. 104, 67 Pac. 16; *People v. Wilmot,* 139 Cal. 103, 72 Pac. 838; *State v. Blythe,* 20 Utah, 378, 58 Pac. 1108.

The California and Utah statutes on this subject are identical with that of Oklahoma. The case of *Birdwell v. U. S.,* 4 Okla. Cr. 474, 113 Pac. 205, relied upon by counsel for plaintiff in error, is not in point. The question there decided was based on the Arkansas statute operative in the Indian Territory prior to statehood, and the facts of that case are dissimilar to the facts in this. We have carefully examined the record, and find that the only objection made against the competency of the witness Rachael Garrison was because of her age. It was nowhere contended upon the trial, nor does it appear from the examination of the witness' testimony, that she was incapable of receiving a just impression of the facts respecting which she was examined, or of relating them truly, which deficiencies form the basis of the legal objections that may be taken to the testimony of a witness under ten years of age where it is not contended that she is of unsound mind. We are convinced that there was

no abuse of discretion by the trial court in the instant case in permitting this witness to testify.

It is also contended that the court erred in refusing to give the following instruction requested by counsel for the defendant;

- "You are instructed that one mode of impeaching the credibility of a witness is to offer evidence of such witness' general reputation for truth and honesty in the community where he lives, and if you find from the evidence in this case that the general reputation of any witness for truth and honesty has been shown to be bad in the community where such witness lives, you may consider such evidence in determining the question of whether such witness has been impeached as the word 'impeached' is used in these instructions."

Upon the trial certain witnesses were introduced who testified that the general reputation of the prosecuting witness W. J. Garrison for truth and honesty was bad; therefore it is contended that the failure of the court to give the foregoing instruction was prejudicial to the plaintiff in error in view of the fact that the court gave the following general instruction relative to the credibility of witnesses:

"You are the sole judges of the credibility of the witnesses and the weight to be given to the testimony of each. If the testimony of a witness is apparently candid and fair, reasonable within itself, and has been in no way impeached, you should not arbitrarily discard his testimony. It is your duty to reconcile the testimony if you reasonably can so that it all may stand. If you cannot reconcile the testimony, then, for the purpose of determining what testimony is worthy of credit, you may take into consideration the apparent candor and fairness of the witness, his demeanor upon the witness stand, the reasonableness of his or her story, the means of knowing the facts concerning which the witness testifies, whether or not the witness

has been in any way impeached, the interest of the witness in the case, if any, whether the witness has made contradictory statements, and all the circumstances surrounding the case."

It is contended that in the general instruction the court called attention to various ways of impeaching a witness without calling attention to the fact that the method employed to impeach the witness Garrison was a proper one, the only effect of the instruction requested was to call the specific attention of the jury to the fact that W. J. Garrison had been impeached. We must presume that the average juryman has a reasonable amount of intelligence. Certainly at this late day in the history of criminal jurisprudence it would be folly to assert that, when a witness takes the stand and testifies that a certain other witness has the general reputation in the community where he resides of being untruthful, the average juryman does not clearly understand that the witness attacked has been impeached for truth. Instructions of the kind requested have met with the condemnation of this court. While perhaps it would not be error, it has repeatedly been held that the better practice is to refrain from the giving of any instruction which has a tendency to single out any particular witness by an instruction touching upon his credibility. The general instruction covering the credibility of all witnesses has been held to be a sufficient rule for the guidance of the jury. *Munson v. State*, 13 Okla. Cr. 569, 165 Pac. 1162. For the reasons above stated, we believe this assignment of error to be without merit.

Lastly it is contended that the evidence is insufficient to support the judgment. This prosecution is based upon section 2558 and the third subdivision of section 2559, Rev. Laws 1910, which read as follows:

"Any use of force or violence, or any threat to use force or violence if accompanied by immediate power of execution, by three or more persons acting together and without authority of law, is riot."

"If such person carried at the time of such riot any species of firearms or other deadly or dangerous weapon, or was disguised, he is punishable by imprisonment in the penitentiary not exceeding ten years and not less than two."

It is alleged in the information, and the state attempted to prove upon the trial, that the parties to the crime were disguised at the time of its commission.

The state's evidence disclosed that the defendant was dressed almost entirely in the wearing apparel of a woman, such as skirt, waist, and hat. His face was partly concealed by cloths and rags wrapped around his head. His eyes, nose, mouth, and a portion of each cheek were exposed. Others in the party were similarly attired, while some of the participants wore only male attire, with their features partially concealed by cloths.

The prosecuting witness and his oldest daughter were able to identify the defendant and those with him by means of recognizing their voices and familiarity with some of the clothes worn (as belonging to the Darneal family), and also by recognizing certain of the features not covered by the attempted disguise.

. The fact that the disguise was penetrable leads to the contention that it was no disguise at all, and therefore the evidence is insufficient. In other words, there may be no conviction of a felony under the foregoing provision of law unless the participants are so completely disguised as to make it impossible to identify them; that is, a prose-

18-14

cution will only lie under this statute when it is impossible for the state to prove the offense. Such a construction would render the statute a dead letter.

For the position taken counsel for plaintiff in error rely upon the case of *Dale County v. Gunter,* 46 Ala. 118, wherein the Supreme Court of Alabama distinguished between a person in ambush and one in disguise. It is asserted that it was held in that opinion as follows:

"A person in disguise is one who is visible to the eye, but who cannot be identified, because of the dress or mask which he wears. A person in ambush or one who is concealed is one not visible to the eye, and may not be in disguise. 'Disguise' has reference solely to the dress or mask assumed by which the party cannot be recognized when near."

Counsel are mistaken. The foregoing is an excerpt from the brief of counsel who represented the plaintiff in error in that case. It forms no part of the opinion of the court. In defining a person in disguise the language employed by the court falls far short of that used by counsel. We quote from the court's opinion as follows:

"The evidence of the plaintiff, as stated and admitted, says the plaintiff's husband was shot by some person in ambush, or concealed in the bushes. The noun 'ambush' means: (1) The act of attacking an enemy unexpectedly from a concealed station; (2) a concealed station, where troops or enemies lie in wait to attack by surprise; an ambuscade; (3) troops posted in a concealed place, for attacking by surprise. The verb 'ambush' means to lie in wait; to surprise; to place in ambush. 'Conceal' means: (1) To hide, or withdraw from observation; (2) to withhold from utterance or declaration. The synonyms of 'conceal' are 'to hide; disguise, dissemble, secrete.' 'To hide' is generic; 'conceal' is simply not to make known what we wish to secrete; 'disguise' or 'dissemble' is to con-

ceal by assuming some false appearance; 'to secrete' is to hide in some place of secrecy. A man may conceal facts, disguise his sentiments, dissemble his feelings, or secrete stolen goods. The verb 'disguise' means: (1) To change the guise or appearance of, especially to conceal by an unusual dress; to hide by a counterfeit appearance; (2) to affect or change by liquor; to intoxicate. The noun 'disguise' means: (1) A dress or exterior put on to conceal or deceive; (2) artificial language or manner, assumed for deception; (3) change of manner by drink; slight intoxication. This learning I derive from Mr. Webster, and I am satisfied with it. I can hardly conceive of things better distinctly marked and different than that of a person or persons in ambush, or concealed in the bushes, where a person so concealed lies in wait to attack by surprise, and a person or persons in disguise, or disguised by an unusual dress, or, in the language of the preamble to the act, to suppress secret organizations of men disguising themselves for the purpose of committing crimes and outrages, by the use of masks, hideous costumes, and other grotesque disguises."

It is not held in that opinion that the disguise worn must be so perfect as to defeat identification. For the purpose of deception and concealment this man was wearing in the nighttime the apparel of a woman, with a cloth wrapped around his face and head which partially concealed his features.

Whether or not a person is disguised within the meaning of the foregoing provisions of law must depend largely upon the facts of each particular case. It is impossible for the court to give any fixed definition that would apply to all the facts and circumstances of which the human mind might conceive. What might be a perfect disguise in the nighttime might be no disguise at all if employed or used in the daytime. There is no fixed standard by which

we may be guided in passing upon a question such as this. However, it is our fixed opinion that this defendant was sufficiently disguised on this occasion, within the meaning of the third subdivision of section 2559, above quoted, as to authorize the jury to assess the punishment prescribed by that provision.

We hold, therefore, that the evidence is sufficient to sustain the conviction, and the judgment is accordingly affirmed.

DOY.LE, P. J., and ARMSTRONG, J., concur.