STATE of Missouri, Respondent,

v.

Charles EVERETT, Jr., Appellant.

No. 54381.

Supreme Court of Missouri,
Division No. 2.

Jan. 12, 1970.

John C. Danforth, Atty. Gen., John C. Craft, Asst. Atty. Gen., Jefferson City, for respondent.

Dudley C. Dunlop, Clayton, for appellant.

PRITCHARD, Commissioner.

Appellant was convicted by the verdict of a jury of stealing property over the value of $50.00. The jury assessed punishment at imprisonment in the Department of Corrections for eight years, but in sentencing appellant the trial court reduced the term to five years imprisonment, with credit being given for time previously spent in jail.

Appellant here attacks the sufficiency of the evidence (and its admissibility) to sustain his conviction in three principal aspects: There was no showing of criminal intent in that appellant did not participate in the theft other than his driving to the scene; and evidence that the value of the property allegedly stolen was over $50.00 was insufficient, as was the evidence of the chain of possession thereof. These contentions are reiterated in challenges, respectively, made upon Instructions Nos. 5 and 1, it being said that there was no evidence to support the giving of these instructions.

The indictment charges that appellant, Charles Everett, Jr., Toney Mason and Jackie Barnett unlawfully and feloniously stole numerous items of personal property of Bruce C. Bogart of a value of $171.50.

On December 21, 1967, Richard Dale Mace, a police officer of the City of Berkeley, was on duty and was working as a "stakeout" on the 6:00 p. m. to 2:00 a. m. shift. He was seated in an unmarked police car parked at the corner of Bessemer and Brown streets. Previously he had driven through the Ramada Inn parking lot at Brown Street and Natural Bridge and observed a 1964 Chevrolet with a California license parked on the west side of the Inn. He observed clothing on a hanger and several packages on the rear floor of the rear seat. From his vantage point fifty or sixty yards away from the Chevrolet, and with the aid of binoculars and illumination by lights in the parking lot, he had a very good view of the area. He observed an old model Chrysler occupied by three Negro men driving slowly toward the parked car, and it pulled in on the north side of the Chevrolet and parked. One of the men, who was seated in the

right front of the Chrysler, alighted and looked around. Appellant, being identified later, was driving the Chrysler. The man who had gotten out of the front seat appeared to be doing something to the window or door of the Chevrolet, the door of which came open and the dome light came on. The man started taking packages from the car and passed them to someone seated in the right rear seat of the Chrysler. Mace then drove to the parking lot and behind the Chrysler, got out, identified himself as a police officer and placed the three men under arrest, advising them that they had a right to remain silent, that anything they said could be used against them in a court of law, that they had a right to have an attorney before and at the time of any interview or interrogation, and that if they could not afford an attorney one would be appointed.

Mace searched the men and removed a screwdriver from the man who had opened the door of the Chevrolet. He observed numerous packages wrapped in Christmas paper in the left rear seat of the car appellant had been driving. Captain Bogart then came to the scene and at Mace's request looked into the back seat of the Chrysler to see if there was anything which belonged to him or which had previously been in his car. Photographs were taken of the Chrysler with its left rear door ajar showing the Christmas packages on the seat. Captain Bogart removed the packages and took them to the police station where they were again photographed on the floor. Mace saw appellant watching Mason as he took the packages out of the Chevrolet and passed them to the Chrysler.

Captain Bogart, of the United States Air Force, and his wife were traveling from West Lafayette, Indiana, to his parent's home in Topeka, Kansas, on December 21, 1967. They stopped at the Ramada Inn motel at Natural Bridge and Brown streets, leaving Christmas presents in the back seat of their locked car. During the evening he heard some noise in the parking lot of the motel, looked out and saw a police car and his own car with its door open and the inside light on. Captain Bogart went to his car and found most of his Christmas presents in the back seat of a car next to his Chevrolet. Three Negro men were at the scene, appellant being recognized by him in court as being one of the men. Captain Bogart helped to remove the packages from the car and to carry them to the police station where they were photographed. He had wrapped several of the packages and had a couple of them wrapped at the store when he purchased them. The following items were in the packages and were purchased by Captain Bogart for Christmas gifts, starting about the middle of November up to about the middle of December, 1967, at various stores in and around Lafayette, Indiana, and in military post exchanges: State's Exhibit 4, a carving knife at a cost of $15.00; State's Exhibit 5, a set of four books costing $4.50; State's Exhibit 7, a robe costing about $14.50; State's Exhibit 8, a volume of Goren's Bridge costing $6.00; State's Exhibit 9, a sweat shirt costing $3.00; State's Exhibit 10, a banlon shirt costing $4.50; State's Exhibit 11, a perfume and powder set (purchased by Mrs. Bogart in Captain Bogart's presence) costing $5.00; and State's Exhibit 12, after-shave lotion costing $2.85. There was also a banlon shirt and sweater, State's Exhibit 6, which Mrs. Bogart purchased and gave to her husband as a Christmas present, which he valued, based upon his knowledge of values and prices of like items in stores, at $35.00. Captain Bogart placed a value of $5.00 on a banlon shirt (State's Exhibit 13) he had given to his brother, and a $7.50 value on a sweater, State's Exhibit 14.

After the packages were photographed, Captain Bogart took them home from the police station and gave them out as Christmas presents. Upon request of the prosecuting attorney's office he sent them back by mail, marking the two boxes as to what the items were and the approximate price.

Captain Bogart could not specifically identify many of the gifts as being exactly

the same as the ones he purchased, but did testify that they were similar to and of the same type. Appellant's objection to the admission of the items into evidence was that the chain of possession was not shown, and that the values had not properly been established by the witness.

On cross-examination Captain Bogart pointed out the packages in which the Christmas presents were, and testified that he had begun purchasing them about the middle of November. After he had given them out he began to gather them back about the middle of February, receiving them within a week. He mailed them in two boxes toward the end of February to the prosecuting attorney.

Jackie Barnett testified for appellant: He was present at the Berkeley Police Station on the night of December 21 between 11:00 and 12:00 o'clock when a conversation occurred in the presence of Captain Bogart, Lieutenant Carter, Toney Mason and appellant. Mason said that he had committed a theft of which appellant and Barnett had no knowledge, and that he had paid appellant to bring him out to the motel. Carter asked Mason if he was admitting the charge, and Mason said "Yes." Appellant did not make a statement, and was not questioned, at the time, concerning his involvement in the theft. On cross-examination Barnett testified that he was convicted in 1967 for stealing over $50.00, and was convicted of other crimes "numerous of times"; in 1961, illegal sale of narcotics; a year in the workhouse in 1966 for stealing; stealing in 1965; larceny from a person in 1964; and stealing in 1957 and 1956. Appellant drove the car on the evening of the instant theft, with Barnett in the rear seat and Mason in the right front.

Toney Mason testified that he was a codefendant with appellant in this case, in which Mason pleaded guilty two days before this trial. He had not yet been sentenced. He was present in the Berkeley Police Station on the evening of his arrest and admitted to Captain Bogart that he had broken into his car; that he had told appellant to bring him out there, and that appellant and Barnett did not know anything about it. Appellant told Captain Bogart he did not have anything to do with it. Prior to coming to the Ramada Inn, Mason did not tell appellant anything about having any intention to steal anything from a car. He paid appellant about $8.00 to drive him. In appellant's presence, Mason said to Captain Bogart, "don't prosecute us, what do you want to prosecute us for because we will pay for any damage to your car." Appellant and Barnett were standing there and agreed that they were willing to help pay for the damage to the car. Mason had one prior conviction, seven or eight months before, for stealing under $50.00.

■ The evidence shows that the items purchased by Captain Bogart and his wife were new and unused at the time of the theft, and were purchased about a month prior thereto. The total cost, and values, as given by Captain Bogart in his testimony was $102.85. These were items which the jury could find were commonly available in stores across the nation at prices comparable to those paid by Captain Bogart. They were articles for personal use, not ordinarily being available other than new in stores, to the public. The evidence of the purchase price of these items was admissible, 52A C.J.S. Larceny § 118, p. 619, as was Captain Bogart's testimony as to the value of State's Exhibits 6, 13 and 14, based upon his knowledge of such values and prices in stores. The jury could find that the aggregate prices and values of the items substantially exceeded $50.00, so to constitute grand stealing under § 560.161 subd. 1(2), RSMo 1959, V.A.M.S. See State v. Napper, Mo., 381 S.W.2d 789, 791 [1], where State v. Bresse, 326 Mo. 885, 33 S.W.2d 919, 921 was quoted, " '[t]he rule seems to be that, where the property is secondhand, * * *, proof as to its cost and its length of use may be put before the jury, and that con-

stitutes evidence of value sufficient to support a finding.' " Since these items were of a nature that everyone, including the members of the jury, would be familiar with at prices somewhere in the range to those paid by Captain Bogart, in various places in the nation, it is of no consequence that there was no showing of the values in the St. Louis area as compared to Lafayette and West Lafayette, Indiana, and in military post exchanges.

■ There is no question under the evidence that the items in packages described by Captain Bogart were in his car at the time it was broken into and the packages transferred to the Chrysler. There is here no suggestion that the purpose of requiring a chain of possession of exhibits offered in evidence to be shown (to prevent tampering, alteration or substitution of such exhibits, State v. Rose, Mo., 428 S.W.2d 737, 740) was subverted by Captain Bogart's inability to state that the exhibits were *exactly* the ones taken from his car. He did testify that the exhibits received were similar or of the same type that were in the Christmas packages. The presence, the value, the removal and the dominion by appellant and his companions over the packages containing the Christmas gifts were sufficiently shown. Captain Bogart identified the boxes in which he mailed the items to the prosecuting attorney's office. It is true that the items were not always in his possession, but the inference the jury could draw is that they were the same as those stolen. He distributed them, regathered them, and mailed them to the prosecutor. State v. Rose, supra holds (428 S.W.2d 740): "It is not necessary that some witness must have continually watched an exhibit or kept it in his personal possession." In State v. Baines, Mo., 394 S.W.2d 312, 316, it was said, "The evidence need not exclude every possibility that something in the interim of police possession disturbed or interfered with the exhibit. It is sufficient if the evidence shows reasonable assurance that it was the same and in the same condition."

■ Appellant's criminal intent and his participation in the theft could reasonably have been found by the jury from the fact of his driving the Chrysler to the scene; his observance of Mason forcing open Captain Bogart's locked car; and his observance and presence when the Christmas packages were taken from the car and placed in the back seat of the Chrysler. The theft had been completed when Officer Mace drove his police car behind the Chrysler in which appellant was seated. More than appellant's presence at the scene of the theft was proved. Compare State v. Deiter, Mo., 446 S.W.2d 609, and State v. Ramsey, Mo., 368 S.W.2d 413. It was for the jury to believe whether appellant's arrival at the scene was merely for the purpose of driving Mason to the area for $8.00 and, as he argues, that appellant was oblivious to the commission of the crime. The state made a submissible case against appellant in all respects.

The above review of the evidence disposes of appellant's contention that Instruction No. 5, on the subject of criminal intent, and that it may be inferred by the facts and circumstances in evidence, had no support in the evidence. State v. Ramsey, supra. So also with the state's main Instruction No. 1, which fairly submitted for a finding appellant's participation, with others, in the theft, the property described by Captain Bogart as being in his car, the value of which was reasonably shown as above discussed.

The court gave Instruction No. 8:

"The Court further instructs you that evidence has been introduced in this case as to the prior convictions of the witnesses, Mason and Barnett. You are not to understand that in the admission of this testimony, the Court is saying to you that because of the prior convictions, the witnesses cannot be relied on to tell the truth, but you may consider

such evidence of prior convictions only as affecting their credibility as witnesses in this case."

Also given was Instruction No. 9, a usual credibility of witnesses instruction advising the jury that it was the sole judge of the credibility of the witnesses and the weight to be given their testimony, and what could be taken into account to make that determination: demeanor, manner, interest in the result of the trial, feelings toward defendant or any witness, and the probability or improbability of statements. The jury was told additionally in this instruction that if knowingly false testimony was given it could reject any portion of such testimony, and it was at liberty to reject all other portions of such witness' testimony.

Appellant says Instruction No. 8 prejudicially directed attention to the convictions of witnesses Mason and Barnett, singling them out, and commented on the evidence in violation of § 546.380, RSMo 1959, V.A.M.S. (which provides: "The court shall not, on the trial of the issue in any criminal case, sum up or comment upon the evidence, or charge the jury as to matter of fact, unless requested to do so by the prosecuting attorney and the defendant or his counsel; but the court may instruct the jury in writing on any point of law arising in the cause"). He says further that Instruction No. 9 was as far as the court should have gone on the subject of credibility of witnesses, citing State v. Carr, Mo., 256 S.W. 1043, 1048.

■ The general rule is that an instruction which unduly directs attention to the credibility of a witness or classes of witnesses or the manner in which the testimony should be received is erroneous. 23A C.J.S. Criminal Law § 1308, p. 751. Instructions on credibility of witnesses should be couched in general terms applying alike to all witnesses, as was done in Instruction No. 9 here. 23A C.J.S. Criminal Law § 1254, p. 628. But it has also been said that where the former con-

viction of a witness is proved for the purpose of affecting his credibility, the court may properly advise the jury as to its right to consider the fact in determining the question of credibility. 53 Am.Jur. Trial, § 783, p. 581; Anno. 120 A.L.R. 1444, 1450, 1451, 1457. In this state it has been repeatedly held that where a defendant who testifies and previous convictions are shown, it is proper to instruct the jury that such convictions are not evidence of defendant's guilt but should be considered only as affecting his credibility as a witness. State v. Johnson, Mo., 55 S.W.2d 967, 968; State v. Adams, 339 Mo. 926, 98 S.W.2d 632, 108 A.L.R. 838; State v. Ransom, 340 Mo. 165, 100 S.W.2d 294. In the case of State v. Bobbitt, 242 Mo. 273, 146 S.W. 799, 803, an instruction was held not erroneous (as determined in a previous appeal, State v. Bobbitt, 228 Mo. 252, 128 S.W. 953, 958) which read, "The court instructs the jury that the only question for you to pass upon in this case is the guilt or innocence of the defendant, Everett Bobbitt, and you should consider the guilt of Rollie D. Kivett and Noble Peacher only as affecting their credibility as witnesses."

■ It would be the better practice to limit the giving of credibility of witnesses instructions to one generally referring to all witnesses alike so as to accord with the general rule. Compare Darneal v. State, 14 Okl.Cr. 540, 174 P. 290, 1 A.L.R. 638; and see State v. Cohen, Mo., 100 S.W.2d 544, where it was held proper to refuse defendant's instruction on credibility which told the jury it could take into consideration that the witnesses were self-confessed thieves and two of them had previous criminal records, where the court gave an appropriate credibility of witnesses instruction. It was said that the matters contained in the refused instruction were proper material for argument of counsel. Here, however, the prior convictions of Mason and Barnett were admitted by them. In effect, Instruction No. 8 told the jury that their testimony should not be absolutely disbelieved by reason of their prior con-

victions, but such could be taken into account on the credibility issue. Under the foregoing authorities and cases, Instruction No. 8 was not erroneous.

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM:

The foregoing opinion by PRITCHARD, C., is adopted as the opinion of the Court.

All of the Judges concur.