COMMONWEALTH *vs.* JAMES A. WALLACE.

Suffolk. November 3, 1993. - February 17, 1994.

Present: LIACOS, C.J., ABRAMS, NOLAN, LYNCH, & GREANEY, JJ.

*Homicide. Identification. Practice, Criminal*, Argument by prosecutor, Instructions to jury. *Malice. Intoxication.*

Where the proof adduced in support of a criminal defendant's motion to suppress identification evidence showed only the duplication of his photograph in two photographic arrays, the judge correctly concluded that the defendant failed to prove by a preponderance of the evidence that the procedures employed by the police were so unduly suggestive that he was denied due process of law. [128-130]

The record of a criminal trial did not support the defendant's contentions that the prosecutor's remarks during closing argument contained a misstatement of the law [132], shifted the burden of proof to the defendant [133], and appealed to the emotions of the jury [133-134].

Where the judge at a murder trial correctly instructed the jury that they could consider the defendant's intoxication in determining whether he acted with deliberate premeditation, and the jury found him guilty of murder in the first degree on that theory, no prejudice resulted from the judge's omission of an instruction on intoxication with reference to the third aspect of malice, namely, malice that may be found by inference from the defendant's commission of an act that a reasonably prudent person would know is likely to result in the death of another. [134-135]

INDICTMENTS found and returned in the Superior Court Department on October 19, 1987.

A pretrial motion to suppress evidence was heard by *John J. Irwin, Jr.*, J., and the cases were tried before him.

*Donald A. Harwood* for the defendant.

*Jane Woodbury*, Assistant District Attorney, for the Commonwealth.

ABRAMS, J. Convicted of murder in the first degree for the deliberately premeditated murder of Abel Harris, James A.

Wallace appeals. See G. L. c. 265, § 1 (1992 ed.).[1] On appeal, the defendant challenges: (1) the denial of his motion to suppress in-court and out-of-court identifications; (2) the prosecutor's closing argument; and (3) the jury instructions. The defendant also asks that we exercise our power under G. L. c. 278, § 33E (1992 ed.), and order a new trial or the entry of a verdict of a lesser degree of guilt. We conclude that there was no reversible error. We affirm the judgments. We also conclude that we should not exercise our power under G. L. c. 278, § 33E, in favor of the defendant.

1. *The facts.* We set forth the evidence in the light most favorable to the Commonwealth. *Commonwealth* v. *Salemme*, 395 Mass. 594, 595 (1985). At approximately 11:35 P.M. on the evening of July 31, 1987, floormen at Bunratty's Cafe, an Allston nightclub, ejected a man who had been obstructing a passageway and repeatedly bumping into band members as they attempted to set-up. Two hours later at approximately 1:30 A.M. on the morning of August 1, 1987, the man who had been ejected re-entered the club pulled out a handgun and shot two or three shots into the ceiling. At this point, Abel Harris, a bartender at the club, climbed over the bar and, while holding his hands up in a surrender fashion, walked toward the armed man. As Abel Harris approached him, the man pulled the trigger on the gun two or three times. The weapon clicked instead of firing. The man then placed the gun against Abel Harris's head and fired a fatal shot. The man then left the club. Abel Harris never regained consciousness and was pronounced dead on August 10, 1987.

On August 2, 1987, the police received information that identified the defendant as the assailant. On August 7, 1987, the defendant was arrested in Salina, Kansas. Witnesses identified the defendant as the person who had been ejected from the nightclub on the night of July 31, 1987, and as the man who shot Abel Harris. The witnesses identified the de-

---

[1]The defendant was also convicted of unlawfully carrying a handgun. G. L. c. 269, § 10 (*a*) (1992 ed.).

fendant through out-of-court photographic arrays and by in-court identifications. There was evidence of the defendant's consciousness of guilt (flight and material alteration of appearance). In addition, the defendant made inculpatory remarks and statements to friends, family and police. The theory of the defense was mistaken identification. Alternatively, the defense theorized that the defendant was so intoxicated that the jurors could not, on the evidence, return a verdict of either murder in the first or murder in the second degree.

2. *Motion to suppress.* On August 3, 1987, the Boston police presented an array of nine black and white photographs to five witnesses.[2] All of the photographs displayed in the array were of white males with facial hair and medium or long hair. One of the photographs in the array was of the defendant. Two of the witnesses selected the defendant's photograph as being that of the assailant.

On October 16, 1987, the police presented the same array of black and white photographs and an array of color photographs to three other witnesses.[3] There was a photograph of the defendant in each array. In the black and white array, there was a photograph of the defendant with long hair and a beard. In the color array, there was a photograph of the defendant with shorter hair, a moustache and a couple of days' growth of beard. Each of the three witnesses viewed the photos alone and each witness viewed only one photo array at a time. Two of the three witnesses selected only the defendant's photo as being that of the assailant. The third witness selected both the defendant's and another man's photo.

Prior to trial, the defendant made a motion to suppress the in-court and out-of-court identification evidence, arguing that

---

[2] The photographs in the black and white array were marked for identification. Two of these photographs were marked as exhibits 7A and 7B. We requested the entire black and white photographic array. We have reviewed the nine photographs in this array and are satisfied that the array was not unduly suggestive.

[3] The photographs in the color array were entered as exhibit 11. We have reviewed all of the nine photographs in the color array and are satisfied that the array was not unduly suggestive.

this evidence was the product of an unnecessarily suggestive identification procedure. After hearing, the judge denied this motion, determining that "the photographic identification procedures [employed] by the police . . . were not unduly suggestive."

In challenging a photographic identification, "[t]he initial burden rests on the defendant to show, by a preponderance of the evidence, that, considering the totality of the circumstances attending the particular identification, the witness was subjected by the State to an identification so unnecessarily suggestive and conducive to irreparable misidentification as to deny the defendant due process of law." *Commonwealth* v. *Holland*, 410 Mass. 248, 253 (1991), citing *Commonwealth* v. *Botelho*, 369 Mass. 860, 865-868 (1976), and *Stovall* v. *Denno*, 388 U.S. 293, 301-302 (1967). On appeal, the defendant does not contend that the procedures surrounding the August 3, 1987, photographic identification were impermissibly suggestive. The defendant directs his attention to the procedures surrounding the October 16, 1987, photographic identification. The defendant asserts that the procedures surrounding the October identification were unnecessarily suggestive because the defendant was the only person whose picture appeared in both the black and white and the color photographic arrays.

"[D]uplication of a defendant's photograph in one or more arrays [is] not . . . sufficient by itself to compel the suppression of a resulting identification." *Commonwealth* v. *Paszko*, 391 Mass. 164, 169 (1984) (witness shown an array of seven color photographs, including one of the defendant with long straight hair and a moustache, and then shown second array of black and white photographs, including a photograph of the defendant with curly hair, a beard, and an earring in one ear; defendant was only suspect featured in both arrays). See also *Commonwealth* v. *Kostka*, 370 Mass. 516, 523-524 (1976) (witness shown a dozen photographs including two of defendant); *Commonwealth* v. *Mobley*, 369 Mass. 892, 896-897 (1976) (witness shown six photographs, including one of defendant, and then shown second array, including photo-

graph of defendant committing unrelated robbery). See also *Commonwealth* v. *LaPierre*, 10 Mass. App. Ct. 641 (1980) (defendant's photograph contained in three successive arrays); *United States* v. *Eatherton*, 519 F.2d 603 (1st Cir.), cert. denied, 423 U.S. 987 (1975) (witness shown multiple arrays, each including defendant's photograph); *United States* v. *Bowie*, 515 F.2d 3 (7th Cir. 1975) (witness selected defendant's picture from array of five black and white photographs and then selected defendant's picture from array of six color photographs; defendant was only suspect featured in both arrays). Rather, "the admissibility of identifications obtained in such circumstances is to be determined with reference to 'the totality of the circumstances' of the challenged episode of identification." *Paszko, supra* at 170, quoting *Botelho, supra* at 867, and *Stovall, supra* at 302. Because the defendant's proof showed only the duplication of his photograph in two photographic arrays, the judge correctly concluded that the defendant "failed to prove by a preponderance of the evidence that [the] procedures employed by the police in the showing of the photographic array[ ] of . . . October 16, 1987, were so unduly suggestive . . . that he was denied due process of law."

3. *The prosecutor's summation.* The defendant asserts that the prosecutor's summation requires reversal of his convictions. The defendant contends that the prosecutor argued an incorrect principle of law to the jury,[4] shifted the burden of proof to the defendant,[5] and appealed to the emotions of the jury.[6]

---

[4]The prosecutor said: "You know from your experience, human beings intend the natural and normal consequences of their own voluntary acts."

[5]The prosecutor said: "I thought I heard [defense counsel] tell you [during his opening statement] that he would produce evidence through April [Jusseaume] who was with his client that night that they got all coked up and went to Bunratty's. I thought that was what he would prove to you. Well, she certainly said she was at Bunratty's, and she certainly said [the defendant] was there, but there was no testimony that I recalled about her and [the defendant] getting coked up."

[6]The prosecutor said: "No state can exist, perform its function in a civilized society, unless it protects its citizens, punishes those who unlawfully

At the conclusion of the prosecutor's summation, defense counsel timely objected to the prosecutor's remark that "human beings intend the natural and normal consequences of their voluntary acts" and to the prosecutor's comment that April Jusseaume did not testify that she and the defendant were "coked up" as defense counsel, in his opening statement, suggested she would. The defendant made a motion for a mistrial, which was denied, and then requested curative instructions with respect to these comments by the prosecutor. The judge gave curative instructions to the jury, to which the defendant did not object. On appeal, the defendant also argues that certain previously unobjected-to remarks by the prosecutor so appealed to the emotions of the jury as to require reversal.

Closing arguments must be viewed "in the context of the entire argument, and in light of the judge's instructions to the jury and the evidence at trial." *Commonwealth* v. *Viriyahiranpaiboon*, 412 Mass. 224, 231 (1992), citing *Commonwealth* v. *Colon-Cruz*, 408 Mass. 533, 553 (1990).[7] "[C]losing argument is identified as argument, the jury understands that, instructions from the judge inform the jury

---

take a human life . . . Some people can think only of criminal defendants who are before the bar of justice presumed under the law to be innocent, but there's innocent people out of court as well as in court. Abel Harris was innocent. . . . How could any of you jurors in good conscience in view of that evidence come to the conclusion that he was so drunk, so inebriated that he was in a zombie-like state, that he didn't know . . . what he did or why he did it? . . . And When Mr. Harris stepped forward [the defendant] still had an opportunity not to be a murderer, but he made that conscious decision to aim the gun, pull that trigger a fourth time. Cold, deliberate act. That's the evidence you have. And that young man fell forward on to the sidewalk mortally wounded. Abel Harris had a right to life and he was deprived of that right through a cold, purposeful, deliberate way. As he was lying on the sidewalk dying, this guy takes off. . . . If you disregard the Judge's instructions in that manner and feel it appropriate to give somebody a break, you would [do so] with . . . a verdict of lawlessness."

[7]The judge repeatedly instructed the jurors that opening statements and closing arguments were not evidence. Those instructions followed the opening statements, preceded the closing arguments and also were part of the general instructions to the jury.

that closing argument is not evidence, and instructions may mitigate any prejudice in the final argument." *Commonwealth* v. *Kozec*, 399 Mass. 514, 517 (1987), citing *Commonwealth* v. *Benjamin*, 399 Mass. 220, 223-224 (1987). We turn first to the two remarks to which the defendant timely objected. See *Commonwealth* v. *Rosa*, 412 Mass. 147, 159 n.12 (1992); *Commonwealth* v. *Person*, 400 Mass. 136, 139 (1987).

A. *The alleged violation of* Sandstrom v. Montana. The defendant asserts that the statement that "human beings intend the natural and normal consequences of their own voluntary acts" violates *Sandstrom* v. *Montana*, 442 U.S. 510 (1979), and requires reversal. We do not agree.

*Sandstrom's* concern was the effect of a judge's instructions which established a conclusive presumption that the defendant possessed the requisite mental state for a conviction of murder on proof by the government of the slaying alone. See *Sandstrom, supra* at 524. The remarks by the *prosecutor* do not come within *Sandstrom, supra.* For the most part, the prosecutor used his closing argument to sum up the Commonwealth's evidence. The prosecutor indicated to the jurors that they were charged with the responsibility of determining the defendant's intent. He told them that they should "draw what inferences [they] find to be appropriate."

The defendant does not argue that the judge's instructions violated *Sandstrom.* The judge told defense counsel that he would instruct the jurors that they should take the law from the judge, not counsel.[8] The judge instructed the jurors as he told defense counsel he would. Defense counsel did not object to the instructions. Reversal on this ground is not required.

---

[8] The judge said: "[I]n the course of closing arguments lawyers many times make reference to the law. Most of the time they do that accurately, some times not so accurately. So the point I want to make to you is that with respect to the law, the lawyers do not tell the jury what the law is, the judge does . . . so to the extent that the counsel undertook to tell you what their judgment was with reference to the applicable law, you should bear in mind that you should take that law from the judge and not from the lawyers."

B. *The alleged burden-shifting comment.* The defendant asserts that the prosecutor's summation shifted the burden of proof and also commented on the defendant's failure to testify. We do not agree.

The prosecutor noted that the defense counsel, in his opening, said that he would produce evidence through Jusseaume that she and the defendant were "coked up." Defense counsel queried Jusseaume on her knowledge of the defendant's use of cocaine and on her knowledge of how much the defendant drank on the night of the slaying. The prosecutor's argument should have been phrased so as to focus on Jusseaume's knowledge about the defendant's intoxication without reference to defense counsel's opening. Nevertheless, contrary to the defendant's claim, the prosecutor never commented, either directly or indirectly, on the defendant's failure to testify. The prosecutor told the jurors in his summation that the Commonwealth had the burden of proof. The judge gave strong and clear instructions on the presumption of innocence[9] and on the Commonwealth's burden of proof. Those instructions are not challenged on appeal. The remark, although better left unsaid, does not require reversal.

C. *The alleged inflammatory emotional appeal.* The prosecutor did not unfairly prejudice the defendant by an unwarranted emotional appeal to the jury. The prosecutor, for the most part, argued the identification evidence of the defendant as the killer and the lack of evidence that the defendant was so intoxicated as to be unable to form the specific intent needed for malice aforethought and deliberate premeditation. In his instructions, the judge forcefully told the jurors that they should make their determination solely on the evi-

---

[9]The judge said: "The presumption of innocence means literally in a criminal trial that the defendant does not have to prove a thing. The defendant does not have to prove that he is innocent. He does not have to present witnesses. He does not have to present evidence. He does not have to testify himself. If he chooses to exercise those rights, then the fact that he did not testify himself is certainly not a consideration that a jury can take and use as any evidence adverse to the interest of the defendant whatsoever. Put another way, . . . [the] burden of proof never shifts from the government to the defendant."

dence.[10] "Any adverse impact, were it to exist resulting from the summation, would have been cured by the judge's charge to the jury." *Commonwealth* v. *Costa*, 414 Mass. 618, 629 (1993).

We "attribute a certain sophistication to the jury as aided by the cautionary remarks of the judge." *Commonwealth* v. *Phoenix*, 409 Mass. 408, 425 (1991), quoting *Commonwealth* v. *Johnson*, 372 Mass. 185, 197 (1977). "The jury [can] be expected to take [closing] arguments with a grain of salt." *Commonwealth* v. *Bradshaw*, 385 Mass. 244, 277 (1982). The judge gave strong, forceful, and correct instructions. We conclude that the prosecutor's summation does not require reversal.

4. *Jury instructions.* The defendant argues that the judge erred in not specifically instructing the jurors that they could consider evidence of intoxication on the third aspect of malice. See *Commonwealth* v. *Sama*, 411 Mass. 293, 297 (1991). The defendant concedes that the judge correctly instructed the jurors that they could consider intoxication in determining whether the defendant acted with deliberate premeditation. See *id.* at 297. The defendant does not challenge the judge's instruction on intoxication on the first and second aspects of malice aforethought. The defendant asserts, however, that the failure to instruct the jurors specifically on intoxication and the third aspect of malice requires reversal of his conviction.[11] We do not agree.

We have said that where, as here, the jurors conclude that a defendant is guilty of murder in the first degree by reason of deliberate premeditation, and the jury instructions are correct on the first two aspects of malice (i.e., specific intent)

---

[10]The judge said: "A jury room is no place for . . . anger or hatred or revenge or pity or compassion" but is, instead, "a place for cold and sober and detached judgment to the extent that any human being is capable of that."

[11]The Commonwealth asserts that the evidence of intoxication was not sufficient to warrant such an instruction. There was conflicting evidence as to the defendant's intoxication. In those circumstances, a judge should instruct on intoxication and the third aspect of malice.

and on deliberate premeditation, error, if any, in the omission of the effect of intoxication on the third aspect of malice is nonprejudicial. *Costa, supra* at 628. There is no basis on this record for a different result. Last, the judge did not preclude the jurors from considering intoxication on the third aspect of malice.[12]

5. *Review pursuant to G. L. c. 278, § 33.* We have reviewed the record as a whole and conclude that there is no reason to either order a new trial or enter a verdict of a lesser degree of guilt.

*Judgments affirmed.*

---

[12]After having specifically instructed the jurors on the three aspects of malice, specific intent and intoxication, the judge concluded that portion of the charge by saying: "[I]f you are satisfied that the government has proved malice aforethought on a consideration of all of the evidence including intoxication or lack thereof for that matter of the defendant at the time, then the government would be entitled to have a murder verdict . . . ."