COMMONWEALTH *vs.* DENNIS P. SANTOS.

No. 95-P-1117.

Bristol. September 12, 1996. - November 15, 1996.

Present: JACOBS, GILLERMAN, & IRELAND, JJ.

*Robbery. Practice, Criminal,* Assistance of counsel, Challenge to jurors. *Jury and Jurors. Identification. Evidence,* Identification. *Due Process of Law,* Delay in appeal, Transcript of trial. *Words,* "Masked," "Disguised."

Evidence at the trial of an indictment for armed robbery while masked that during the robbery the defendant had worn a baseball cap and sunglasses and had a three-inch band-aid on his cheek was insufficient for the jury to find the defendant guilty of the masked element of the offense and the defendant's motion for a required finding of not guilty on that element should have been allowed. [623-625]

A criminal defendant, claiming on appeal that his trial counsel was ineffective for failing to make a timely and proper objection to the prosecutor's peremptory challenge of a black juror, did not demonstrate that he was thereby deprived of an otherwise available substantial ground of defense. [626-627]

At a criminal trial the defendant did not demonstrate that the photographic identifications of him were the product of unnecessary suggestion by reason of his photograph being the only one of thirteen individual black males to appear in two successive arrays, and the judge correctly denied the defendant's motion to exclude the identification evidence. [627-628]

A forty-nine month delay in receiving trial transcripts for an appeal in a criminal case did not warrant reversal of the defendant's conviction, where there was no showing that the Commonwealth intentionally or deliberately interfered with the defendant's right to prosecute his appeal or that the defendant suffered any prejudice from the delay. [628-629]

INDICTMENT found and returned in the Superior Court Department on December 13, 1989.

The case was tried before *Gerald F. O'Neill, Jr.,* J.

*Michael A. Cioffi* for the defendant.

*Elspeth B. Cypher,* Assistant District Attorney, for the Commonwealth.

IRELAND, J. The defendant was convicted under G. L. c. 265, § 17, for the armed robbery of a bank while masked or disguised and was sentenced to from nine to twelve years in prison.[1] Several bank employees had ample opportunity to observe the defendant, although he wore a baseball hat, sunglasses, and a three-inch band-aid upon one cheek during the crime. The defendant contends that those accouterments are insufficient as a matter of law to satisfy the statute's "masked" element. There is a minimum five-year prison sentence for a first offense of armed robbery "while masked or disguised or while having [one's] features artificially distorted. . . ." G. L. c. 265, § 17, as amended through St. 1952, c. 406, § 1.[2] Absent being masked, a defendant may be sentenced under the statute to any term of years in prison, up to and including life.

The defendant urges that his motion for a required finding of not guilty on the masked element of the indictment was wrongfully denied at his trial. We agree and, therefore, remand the matter to the Superior Court for resentencing based upon a conviction for unmasked or simple armed robbery. The remand is necessary because, although the sentence that was imposed falls within the limits of the statute for unmasked or undisguised armed robbery, the judge may well have considered the masked aspect of the verdict when imposing the sentence. Compare *Commonwealth* v. *Eaton*, 2 Mass. App. Ct. 113, 119 (1974).

---

[1]The defendant was indicted on three counts of armed robbery while masked. He was tried and acquitted on the first count, but was tried and found guilty on the second count, which is before this court. He pleaded guilty on the third count and was sentenced to from eight to twelve years' imprisonment. The sentences on the second and third counts are being served concurrently.

[2]To our knowledge, Massachusetts is the only State in which the wearing of a mask or disguise, or the attempt to conceal one's facial features, is, by statute, an aggravating factor to the crime of armed (or unarmed) robbery. A handful of States add a "masked" or "disguised" element to certain other named crimes. See, e.g., Ill. Comp. Stat. c. 720, § 5/10-2(4) (1994) (aggravated kidnaping); Minn. Stat. § 609.735 (1994) (public misconduct or nuisance); N.M. Stat. Ann. §§ 30-3-2 (assault), 30-3-9 (assault on school employee), 30-22-22 (assault on peace officer) (Michie 1994); Okla. Stat. tit. 21, §§ 1302 (wearing of mask while trespassing considered prima facie evidence of intent to commit felony inside), 1303 (assault) (1991); S.C. Code Ann. § 16-7-110 (Law. Co-op. 1985) (wearing of mask, robe, or disguise while demanding admission or entrance into another's dwelling).

1. *Motion for required finding of not guilty.* The defendant's motion seeking to have the masked element of the armed robbery charge withdrawn from the jury's consideration should have been allowed "if the evidence [was] insufficient as a matter of law to sustain a conviction on the charge." Mass. R.Crim.P. 25(a), 378 Mass. 896 (1979). On appeal from the denial, we determine that the evidence, read in the light most favorable to the Commonwealth, was insufficient for the jury to find the masked element of the offense. *Commonwealth* v. *Latimore,* 378 Mass. 671, 677 (1979), *S.C.,* 423 Mass. 129 (1996). *Commonwealth* v. *Basch,* 386 Mass. 620, 622 (1982).

The terms "masked" and "disguised" in G. L. c. 265, § 17, are given no special or technical definitions and, therefore, carry only their common and everyday meanings, such as those found in any standard dictionary. See *Commonwealth* v. *Flynn,* 362 Mass. 455, 478 (1972). See also *Darneal* v. *State,* 14 Okla. Crim. 540, 547 (1917). In the *Darneal* case, the court cited numerous dictionary definitions for one of those terms:

> " '[D]isguise' means . . . [t]o change the guise or appearance of, especially to conceal by an unusual dress; to hide by a counterfeit appearance . . . . The noun 'disguise' means . . . [a] dress or exterior put on to conceal or deceive . . . . " *Ibid.*

The American Heritage Dictionary of the English Language (3d ed. 1992) defines "disguise" as an effort "[t]o modify the manner or appearance of in order to prevent recognition," or "[t]o conceal or obscure by . . . false show," or "[c]lothes or accessories worn to conceal one's true identity." *Id.* at 533. "Mask" is defined as a noun: "[a] covering worn on the face to conceal one's identity"; or as a verb: "to cover in order to conceal, protect, or disguise . . . [t]o conceal one's real personality, character, or intentions." *Id.* at 1105.

In the final analysis, though, the question "[w]hether. . . a person is disguised within the meaning of the [particular] provision[] of law must depend largely upon the facts of each particular case . . . . It is impossible . . . to give any fixed definition [for the terms masked or disguised] that would apply to all . . . facts and circumstances. . . ." *Darneal* v. *State,* 14 Okla. Crim. at 547.

We conclude that the defendant was not masked or disguised within the meaning of G. L. c. 265, § 17, and, therefore, that question should not have been put to the jury. The baseball hat and the sunglasses are everyday items of apparel that are commonly worn and which, by themselves, do not suggest or even remotely imply an intention or conscious effort to conceal identity. The robbery occurred in full daylight at about 9 A.M. in the summer, at a time when it would not be unusual for a person to wear a baseball hat and sunglasses. Contrast *Commonwealth* v. *Flynn*, 362 Mass. at 459 (defendants wore women's silk stockings over their faces); *Commonwealth* v. *Cincotta*, 379 Mass. 391, 392 & n.2 (1979) (defendant wore a blackening substance on his face and hair, "which account[ed] for the indictment under the statute for robbery with features artificially distorted"); *Commonwealth* v. *Amaral*, 13 Mass. App. Ct. 238 (1982) (perpetrators wore ski masks).

Further, the band-aid worn by the defendant in this case was not of such size as to disguise or mask the defendant. Contrast *Darneal* v. *State*, 14 Okla. Crim. at 547 (defendant had wrapped cloth and rags around a large portion of his face and head). Moreover, no evidence appears in the record that the band-aid masked or concealed any identifying or conspicuous mark or blemish upon the defendant's cheek. Indeed, the only evidence of any such mark upon the defendant's face (other than prominent acne or acne scars) was that it was located on the opposite cheek. In short, evidence merely that the defendant wore a band-aid could not have supported a reasonable inference that, in so doing, he intended or attempted to hide a revealing facial feature.

The Supreme Judicial Court had occasion in *Commonwealth* v. *Flynn*, 362 Mass. at 478, to examine the "while masked or disguised" language of G. L. c. 265, § 21, and rejected an interpretation that the statute requires that a defendant's facial features be "so totally cover[ed] or conceal[ed] . . . that the wearer cannot be identified or recognized. The statute applies equally to the inept or bungling masquerader as it does to the skilful one." *Ibid.* Similarly, in *Darneal* v. *State*, 14 Okla. Crim. at 547, the court held that

the disguise need not be so perfect as to defeat identification.[3] Nevertheless, while not determinative, the fact that several witnesses had little trouble identifying the defendant in spite of the items he wore is of some significance. No evidence appears that the sunglasses worn by the defendant in this case were fitted with unusually large or dark lenses or reflective lenses that would prevent an eyewitness from seeing the defendant's eyes.

The court in *Commonwealth* v. *Flynn, supra,* also pointed approvingly to the trial judge's charge to the jury: "It is enough if the [face's] true character is screened or concealed . . . [to] such an extent that recognition of it is materially and substantially obstructed." *Ibid.* The evidence in the case before us was insufficient that the baseball hat, sunglasses, or band-aid "materially and substantially obstructed" recognition of the defendant. Other than the defendant's wearing the items we have described, the Commonwealth produced no evidence from which the jury reasonably could have inferred an attempt on his part to mask, disguise, or artificially distort his features. The defendant's motion for a required finding of not guilty of being masked while committing the crime should have been allowed.

2. *Other claims.* The defendant claims ineffective assistance of counsel in his trial counsel's failure to object to what he now claims was an unrepresentative jury and to object to the prosecutor's peremptory challenge dismissing a black juror from the jury venire. The defendant also contends that the photographic arrays shown to the robbery victims were impermissibly suggestive and, therefore, identification evidence should have been excluded, and that he was prejudiced by a forty-nine month delay in receiving trial transcripts from the Commonwealth. None of these claims requires reversal of the defendant's conviction.

---

[3]The defendant in *Darneal* argued the identical point as the defendant in *Flynn,* namely that, unless the disguise is so successful as to prevent identification, the statute cannot be applied. The *Darneal* court reduced that argument to its logical and absurd end point: the statute would be rendered meaningless and without effect, as no defendant could ever be prosecuted under it unless he had gone unrecognized and unidentified as the perpetrator. See also Annot., What amounts to disguise within criminal law, 1 A.L.R. 642 (1919), opining that the *Darneal* court's conclusion that the disguise does not have to be successful is sound; otherwise, the purpose of the statute to impose a more severe penalty when a mask or disguise is worn would go unfulfilled.

a. *Ineffective assistance of counsel.* The defendant's trial counsel did not seasonably object to the racial composition of the jury panel and the jury venire. He also did not object to the Commonwealth's peremptory challenge excluding from the jury venire an individual who the defendant now claims was the sole black member. The defendant argues that, by failing to object on both matters, his trial counsel was ineffective, thus forcing him to be tried before an unrepresentative jury. As support for this argument, the defendant cites *Commonwealth* v. *Soares,* 377 Mass. 461, 488, cert. denied, 444 U.S. 881 (1979), for the proposition that art. 12 of the Commonwealth's Declaration of Rights guarantees him "a petit jury that is as near an approximation of the ideal cross-section of the community as the process of random draw permits." *Ibid.* The defendant goes on to argue that the peremptory challenge in question contravened the admonition in *Soares* against the use of such challenges "to exclude members of discrete groups" based solely on membership in the group. *Ibid.*

The claim as to the racial composition of the jury panel fails for several reasons. First, the defendant has made no showing that the jury panel or venire was *not* drawn from a cross-section of the population of Bristol County wherein the crime was committed; nor does he present any evidence of the actual percentage of black persons within that county. There also was no evidence (other than the hedged statement at sidebar made by the defendant's trial counsel) that the dismissed juror, in fact, was the only black person in the jury panel. See *Commonwealth* v. *Leitzsey,* 421 Mass. 694, 700 (1996), where the defendant failed to show that black persons residing in Berkshire County had been systematically excluded from the jury selection process or that representation of black persons in jury venires drawn from that county was not fair, reasonable, or proportional.

Failure to object to the peremptory challenge does not support the claim of ineffective assistance of counsel. Even if proper and timely objection had been made to the prosecutor's peremptory challenge and the juror's dismissal,[4] we fail to see how that "might have accomplished something material for the defense." *Commonwealth* v. *Satterfield,* 373 Mass. 109,

---

[4]Defense counsel made a belated (and unsuccessful) attempt to have the dismissed juror returned to the venire.

115 (1977). *Commonwealth* v. *Colon-Cruz*, 408 Mass. 533, 558 (1990). In the first place, the prosecutor could have challenged the black juror for any neutral reason. *Commonwealth* v. *Hamilton*, 411 Mass. 313, 317 (1991). We cannot say whether the defendant could have made the requisite showing of impropriety to rebut the presumption that the challenge was properly motivated. See *Commonwealth* v. *Green*, 420 Mass. 771, 776 (1995). Defense counsel was unsure whether the dismissed juror was the only prospective black juror in the jury panel. And the prosecutor stated at sidebar that he also was unaware when exercising the challenge whether the particular person was the only black member of the jury panel. Contrast *Commonwealth* v. *Harris*, 409 Mass. 461, 463, 466 (1991) (prima facie showing is made of the impropriety of a peremptory challenge of a single juror where the challenged juror is of the *same* race as the defendant *and* is the *only* member of that race within the jury panel).

As with a number of ineffective assistance claims, we are here asked to engage in multiple layers of speculation in order to reach the bottom line whether, as a result of his trial counsel's omissions, the defendant likely was deprived of "an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). First, we do not know for sure whether the challenged juror was the only black panel member who was available that day. If he were, defense counsel could have made a prima facie showing that the challenge was racially motivated. See *Commonwealth* v. *Harris*, 409 Mass. at 463, 466. If he were not, then counsel's showing of possible impropriety might have come up short. In any event, even if counsel had made a prima facie showing of impropriety, we cannot say with certainty that the prosecutor more likely than not would have been unable to justify his challenge on neutral grounds. In short, we cannot conclude on these facts that the defendant likely was deprived of an otherwise available substantial ground of defense because of his trial counsel's failure to object to the prosecutor's peremptory challenge.

b. *Identification evidence.* The defendant moved prior to trial to suppress identifications made by several witnesses, because his photograph was the only one of some thirteen individual black males to appear in two successive arrays. The defendant contends that, taken together, the photographic ar-

rays were "unnecessarily suggestive and conducive to irreparable mistaken identification," *Commonwealth* v. *Venios*, 378 Mass. 24, 26-27 (1979), although he concedes that, taken independently, the photographic identification procedures used by police were not unduly suggestive.

"[D]uplication of a defendant's photograph in one or more arrays [is] not . . . sufficient by itself to compel the suppression of a resulting identification." *Commonwealth* v. *Wallace*, 417 Mass. 126, 129-130 (1994), quoting from *Commonwealth* v. *Paszko*, 391 Mass. 164, 169 (1984). Other than pointing to inclusion of his picture in both photographic arrays, the defendant cites no other factors that impermissibly, or unconstitutionally, tainted the identification evidence. The defendant's motion to exclude that evidence was properly denied.

c. *Delay in receiving written trial transcripts.* The defendant waited forty-nine months to receive written trial transcripts for this appeal from the time he first requested them from the Commonwealth. At oral argument, the Commonwealth was unable to satisfactorily explain the delay other than to attribute the problem to the court reporter service. The Commonwealth assured the panel that steps have now been taken which one hopes will prevent the problem of long delays such as this from arising in the future.

The defendant contends that this unconscionable delay violated his appellate rights. It is settled that the guaranty of a speedy trial found in the Sixth Amendment to the United States Constitution and in art. 11 of the Massachusetts Declaration of Rights does not apply to the appellate process. *Commonwealth* v. *Hudson*, 404 Mass. 282, 284 (1989). In some instances, however, a defendant's due process rights may be implicated if it is shown that the Commonwealth has deliberately blocked the defendant's appellate rights or if the defendant has suffered "inordinate and prejudicial delay" in exercising those rights. *Ibid.*

The defendant has not shown evidence of intentional or deliberate moves by the Commonwealth calculated to interfere with his right to prosecute an appeal of his conviction. The delay appears due more to bureaucratic inattention or ineptitude than to intentional scheming by the Commonwealth. The defendant also has suffered no palpable prejudice in pursuing a vigorous and effective appeal. A new trial has not been ordered. Hence, the defendant cannot argue that the

delay may have unfairly impaired his right to a fair retrial owing, say, to witness unavailability or to witness failure of memory.

The judgment on count two of the indictment is vacated, and the verdict insofar as it reflects a conviction of armed robbery while masked or disguised is set aside (the verdict shall stand insofar as it reflects a conviction of armed robbery). The matter is remanded to the Superior Court for resentencing on the offense of simple armed robbery.

*So ordered.*